**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Clark v. Dept. of Rehab. & Corr.*, Slip Opinion No. 2025-Ohio-1577.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-1577

THE STATE EX REL. CLARK *v.* DEPARTMENT OF REHABILITATION AND CORRECTION.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Clark v. Dept. of Rehab. & Corr.*, Slip Opinion No. 2025-Ohio-1577.]**

*Mandamus—Public Records Act—R.C. 149.43—Writ denied as moot with respect to public-records request for "Legal Dockets" memorandum because respondent produced the requested record—Writ denied with respect to other public-records requests because relator failed to show a violation of Public Records Act—Relator failed to satisfy burden of proof necessary for an award of statutory damages because evidence is evenly balanced on whether person responsible for the requested public record received proof of payment for a copy of the requested record—Writ and requests for statutory damages and court costs denied.*

(No. 2024-0437—Submitted January 7, 2025—Decided May 6, 2025.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ. FISCHER, J., concurred in judgment only. KENNEDY, C.J., concurred in part and dissented in part, with an opinion. BRUNNER, J., concurred in part and dissented in part and would grant the motion for leave in full.

**Per Curiam.**

**{¶ 1}** Relator, Thomas Clark, an inmate at the Lebanon Correctional Institution ("the prison"), filed this original action seeking a writ of mandamus against respondent, the Ohio Department of Rehabilitation and Correction ("DRC"), ordering DRC to produce records in response to his public-records requests. He also seeks awards of statutory damages and court costs, and he has filed a motion for leave to file rebuttal evidence.

**{¶ 2}** We grant in part and deny in part Clark's motion for leave to file rebuttal evidence. On the merits of Clark's mandamus claim, we deny the writ as moot with respect to the request for a record that was provided after the filing of this action and deny the writ outright with respect to the other requests because Clark has failed to show a violation of the Public Records Act, R.C. 149.43. We also deny Clark's requests for statutory damages and court costs.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. "Legal Dockets" Memorandum

**{¶ 3}** On February 13, 2024, Clark sent an electronic kite[1] to Ellen Myers, the warden's assistant at the prison and the person responsible for responding to inmate public-records requests at the prison. Clark requested paper copies of "(1) the memorandum addressed to Incarcerated Persons, from Stacy Wicks, Library Administrator I, OCSS, on February 8, 2024, in regards to 'Legal Dockets,' and

---

1. "A kite is a type of written correspondence between an inmate and prison staff." *State ex rel. Griffin v. Szoke*, 2023-Ohio-3096, ¶ 3.

(2) any other memorandum and/or communication regarding this issue from DRC Legal Services."

{¶ 4} The next day, Myers asked Clark to send her a "cash slip" for ten cents. Clark completed a cash slip in the amount of ten cents and addressed it to Myers. The cash slip lists the subject matter as a record request for a February 8, 2024 memorandum "from Stacy Wicks; et al," contains Clark's signature, and states that it was approved by a person with the initials "HS." In the date-processed box is a stamp that reads "PAID Feb 21 2024." According to Myers, she did not receive Clark's cash slip, because he "deceptively placed the cash slip in the outgoing mail slot" despite knowing that the correct procedure is to place the cash slip "inside a paper kite envelope . . . addressed to [her] attention."

{¶ 5} In June 2024, after Clark commenced this action, Clark received a copy of the requested records.

### B. ViaPath Memorandum

{¶ 6} In March 2024, Clark sent an electronic kite to the prison's mailroom department, requesting a paper copy of a February 22, 2024 mailroom-department memorandum regarding the "ViaPath pictures and media review process." Lieutenant B. Holley, the mailroom-department supervisor at the prison, responded as follows:

> If you are refer[r]ing to the Facility message I sent out to your tablets. Regarding the issues moving forward I will not prov[ide] a copy. It reads as follows: The mail room staff is constantly receiving requests to review pictures and videos that have been denied by Viapath/GTL. Viapath/GTL have guidelines that will automatically deny pictures that are: filtered, like snapchat filters that alter the picture, hand gestures of any kind: Example peace sign, heart hands, anything illegal on a state or federal level and 3rd party pictures such

as posters, love letters etc. They will also deny any media containing more than one image in each picture . . . .

Clark alleges that he never received a paper copy of the ViaPath memorandum. Myers attests that Holley advised Clark to submit his request to her. There is no evidence that Clark submitted a request for the ViaPath memorandum to Myers.

### C. Commissary Receipts and Price Lists

{¶ 7} Also in March 2024, Clark sent an electronic kite to Ron Watts, a commissary and cashier supervisor at the prison. Clark requested paper copies of (1) commissary receipts for his purchases at the prison's commissary store from May 2021 to the date of his request and (2) every commissary price list for each corresponding receipt date. Watts responded, "You will nee[d] to request these through Mrs. Myers, the Warden's Assistant." Clark has not submitted any evidence to indicate that he submitted a request for his commissary receipts and corresponding price lists to Myers.

### D. Clark Files This Action

{¶ 8} Later in March 2024, Clark filed a petition for a writ of mandamus ordering DRC to provide him with paper copies of the requested records. He also seeks awards of statutory damages and court costs. DRC filed a motion to dismiss, which we denied and sua sponte granted an alternative writ. 2024-Ohio-2781. The parties have filed evidence and merit briefs. Clark did not file a reply brief, but he filed a motion for leave to file rebuttal evidence. Attached to Clark's motion are several exhibits that he offers to rebut certain averments made by Myers in her affidavit that DRC submitted as evidence. DRC opposes Clark's motion.

## II. ANALYSIS

### A. Motion for Leave to File Rebuttal Evidence

{¶ 9} Our rules allow a relator in an original action to seek leave to file rebuttal evidence. Rule 12.06(B). Rebuttal evidence "'explain[s], refute[s], or

disprove[s] new facts introduced into evidence by the adverse party; it becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence.' " *State ex rel. Mobley v. Powers*, 2024-Ohio-104, ¶ 11, quoting *State v. McNeill*, 1998-Ohio-293, ¶ 44.

{¶ 10} Clark attached five exhibits to his motion for leave to file rebuttal evidence. We grant Clark's motion for leave to file proposed Exhibits 3 and 4 as rebuttal evidence but deny the motion with respect to proposed Exhibits 1, 2, and 2-E.

*1. Proposed Exhibits 1 and 2*

{¶ 11} Clark's proposed Exhibit 1 is an undated flyer that promotes cooling towels for sale and that instructs interested purchasers to "fill out a cash slip," address it to "VVA Cooling Towel," and "drop it off in the mail slot in the West Corridor." His proposed Exhibit 2 is an undated flyer that promotes coolers for sale and that instructs interested purchasers to "drop cash slips in the mailbox."

{¶ 12} Clark asserts that the two flyers show cash slips "that go to those departments should simply be placed in the inmate mail slot" and that he does not need to put cash slips for copies of public records inside a paper-kite envelope, as Myers testified in her affidavit. In response, DRC asserts that the two flyers are not relevant, because they do not "track and record official business of [the prison] or [DRC]."

{¶ 13} We deny Clark's motion for leave to file proposed Exhibits 1 and 2 as rebuttal evidence. The exhibits do not explain, refute, or disprove Myers's averments regarding the proper procedure for submitting cash slips for copies of public records. Instead, the exhibits simply show that inmates who desired to purchase the items offered for sale should deliver cash slips as specified in the flyers. The exhibits do not help explain that DRC had a policy requiring that inmates place all cash slips—including cash slips to pay for copies of public records—in "the inmate mail slot," as Clark contends. Neither do they refute or

disprove Myers's averment that Clark "deceptively placed" his cash slip in the outgoing mail slot. The exhibits, therefore, are not proper rebuttal evidence.

### 2. *Proposed Exhibit 3*

**{¶ 14}** Clark's proposed Exhibit 3 is a July 2024 electronic kite that Clark sent to Myers, stating, "Regarding our conversation earlier regarding the proper way to send you a paper kite and cash-slip, is there a written record, policy, or regulation that describes the process you articulated to me?" Myers responded to Clark by quoting the relevant portion of the inmate handbook regarding kites, stating:

> [T]o answer your question, there is not a policy, written record, or regulation that provides step by step instructions on how to use a kite. However, it is my expectation that you send a cash slip or other documents inside a folded/sealed kite, addressed to my attention, until such documents are available via Via Path tablets.

According to Clark, proposed Exhibit 3 shows that there is no policy requiring that inmates send Myers a "cash-slip in a paper-kite."

**{¶ 15}** DRC did not introduce evidence of a policy requiring that inmates send Myers a cash slip in a paper kite. Instead, DRC introduced evidence that Myers had informed Clark to place his cash slips for paper copies of public records "inside a paper kite envelope . . . addressed to my attention." Since Myers did not aver that DRC has a policy requiring that inmates send her a cash slip in a paper-kite envelope, proposed Exhibit 3 does not refute or disprove new facts introduced into evidence by DRC.

**{¶ 16}** Clark's proposed Exhibit 3 instead helps explain DRC's evidence that Myers had informed Clark about the process of submitting cash slips for paper copies of public records. The exhibit further helps explain why Myers required

Clark to submit his cash slips in a specified manner—i.e., to ensure that her office received the cash slip and properly processed Clark's requests for paper copies of public records. *See Mobley*, 2024-Ohio-104, at ¶ 11 (rebuttal evidence explains, refutes, or disproves new facts introduced into evidence by the adverse party). For this reason, we grant Clark's motion for leave to file proposed Exhibit 3 as rebuttal evidence.

### 3. Proposed Exhibit 4

{¶ 17} Clark's proposed Exhibit 4 is another July 2024 electronic kite that Clark sent to Myers. In that kite, Clark discussed this case and agreed that Myers had given him a copy of the "library memo" in June 2024. Clark argues that the exhibit shows that Myers did not tell him until June 2024—approximately four months after Clark made his first records request at issue in this case—that he had to send her his cash slips for paper copies of public records in a paper-kite envelope.

{¶ 18} Clark's proposed Exhibit 4 fails to support his claim that Myers first told him in June 2024 to send his cash slips for paper copies of public records in a paper-kite envelope directly to her. Proposed Exhibit 4 shows that in her response to Clark's electronic kite, Myers acknowledged that Clark had "the right to file legal claims" and then added that she believed he was "being deceptive." She did not state in her response that "the first time that she told [Clark] to send her a cash-slip in a paper kite was on June 13, 2024," as Clark alleges. Thus, Clark's proposed Exhibit 4 does not refute or disprove any new facts introduced into evidence by DRC.

{¶ 19} Nonetheless, proposed Exhibit 4 helps explain the circumstances surrounding Myers's and Clark's June 13, 2024 discussion that Myers refers to in her affidavit. It also confirms Myers's averment that Clark received a copy of the "Legal Dockets" memorandum and illustrates that Myers did not give Clark a paper copy of the memorandum until approximately four months after he submitted the request. In proposed Exhibit 4, Clark admits that on June 13, 2024, he received a

copy of the "library memo," i.e., the "Legal Dockets" memorandum. Thus, we grant Clark's motion for leave to file proposed Exhibit 4 as rebuttal evidence.

### 4. Proposed Exhibit 2-E

{¶ 20} Clark's proposed Exhibit 2-E is a May 2024 electronic kite that Clark sent to Myers, requesting "a paper copy of all of my Jpay kite logs from 2018 to present day." Myers responded that she had "requested from Inspector S. Cole a copy of [Clark's] JPAY kite log from January 2018 to the present" and that Clark would be contacted once she received the documents. Clark contends that this evidence shows that Myers, "as the Public Information Officer at [the prison], is more-often-than-not *not* the actual custodian of records requested" and that Myers's job is usually to "go and get the records" from the official who has them. (Emphasis in original and boldface and underlining deleted.)

{¶ 21} Proposed Exhibit 2-E does not explain, refute, or disprove any new facts introduced into evidence by DRC. DRC did not submit any evidence that Myers is "the actual custodian of records requested." Instead, DRC's evidence shows that Myers is the person responsible for responding to inmate public-records requests at the prison. We therefore deny Clark's motion for leave to file proposed Exhibit 2-E as rebuttal evidence.

### B. Mandamus

{¶ 22} "[U]pon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1). Before making copies available, "the public office or person responsible for the public record" may require a requester who asks for copies of a public record "to pay in advance the cost involved in providing the cop[ies] of the public record." R.C. 149.43(B)(6).

{¶ 23} Mandamus is an appropriate remedy to compel compliance with the Public Records Act. R.C. 149.43(C)(1)(b). To obtain a writ of mandamus, Clark

must show by clear and convincing evidence that he has a clear legal right to the relief he requests and that DRC has a clear legal duty to provide it. *State ex rel. Clark v. Dept. of Rehab. & Corr.*, 2024-Ohio-770, ¶ 6.

{¶ 24} In his merit brief, Clark asserts that he has a clear legal right to copies of the requested records and that DRC "has a clear legal duty to promptly provide him with paper copies upon request." (Boldface deleted.) DRC contends that Clark has not demonstrated that he has a clear legal right to mandamus relief because he did not (1) show that he prepaid for the "Legal Dockets" memorandum and (2) submit correct public-records requests for either the ViaPath memorandum or his commissary receipts and corresponding price lists.

*1. Prepayment for the "Legal Dockets" Memorandum*

{¶ 25} The parties agree that Clark received a copy of the "Legal Dockets" memorandum after the filing of this mandamus action. Therefore, Clark's mandamus claim with respect to this record is moot. *See State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 2009-Ohio-1767, ¶ 14 (the respondent's providing the requested records to the relator after the relator filed the mandamus action renders the mandamus claim moot).

*2. Public-Records Requests for ViaPath Memorandum and Commissary Receipts and Price Lists*

{¶ 26} With respect to Clark's requests for paper copies of the ViaPath memorandum and his commissary receipts and corresponding prices lists, DRC asserts that Clark failed to submit his requests for paper copies of the records to Myers, the person responsible for responding to inmate public-records requests at the prison. Instead, Clark submitted his request for a paper copy of the ViaPath memorandum to the prison's mailroom department (to which Holley, the mailroom-department supervisor at the prison, responded) and his request for paper copies of his commissary receipts and corresponding price lists to Watts, a commissary and cashier supervisor at the prison. DRC maintains that neither

Holley nor Watts is responsible for responding to public-records requests at the prison. DRC further argues that Clark failed to follow up with Myers after Holley and Watts each told him to direct his requests for records to her.

### a. ViaPath Memorandum

{¶ 27} Whether Clark is entitled to a writ of mandamus ordering DRC to comply with his request for a paper copy of the ViaPath memorandum depends on whether "a public office or the person responsible for public records" failed to comply with an obligation under R.C. 149.43(B). R.C. 149.43(C)(1). Clark does not explain whether Holley is "a public office or the person responsible for public records" and failed to comply with an R.C. 149.43(B) obligation. Instead, he generally asserts that DRC "has a clear legal duty to promptly provide him with paper copies upon request." (Boldface deleted.)

{¶ 28} R.C. 149.43(B)(1) provides:

> Upon request by any person . . . , all public records responsive to the request shall be promptly prepared and made available for inspection to the requester at all reasonable times during regular business hours. . . . [U]pon request by any person, *a public office or person responsible for public records* shall make copies of the requested public record available to the requester at cost and within a reasonable period of time. . . .

(Emphasis added.) In turn, R.C. 149.43(C)(1) grants a remedy, including a writ of mandamus, to a person "aggrieved by the failure *of a public office or the person responsible for public records* . . . to comply with an obligation in accordance with" R.C. 149.43(B). (Emphasis added.) Read together, these two provisions make clear that a public-records request must be directed to the public office or person responsible for the record requested. *See State ex rel. Berry v. Booth*, 2024-Ohio-

10

5774, ¶ 16 (denying writ of mandamus when the relator failed to meet his burden of showing that he requested the records at issue from a public office or the person responsible for public records).

{¶ 29} Although R.C. 149.43 imposes obligations on public offices and persons responsible for public records, "that does not mean that every employee . . . of a public office who receives a public-records request must directly respond to the request rather than directing the requester to the custodian of the records within the office." *State ex rel. Ware v. Dept. of Rehab. & Corr.*, 2024-Ohio-1015, ¶ 32 (lead opinion); *see also id.* at ¶ 53 (DeWine, J., concurring in part and dissenting in part) ("There is nothing unreasonable or unlawful about a prison establishing a point of contact who is responsible for responding to public-information requests."). Consequently, an employee's redirecting a public-records requester to the proper public office or person responsible for public records or to where the requested public record may be located does not appear to be contrary to the overall design of the statute, much less a denial of the records request. *See id.* at ¶ 33 (lead opinion); *see also State ex rel. Griffin v. Szoke*, 2023-Ohio-3096, ¶ 9 (inmate failed to show violation of the Public Records Act when the recipient of his records request responded by telling inmate that he had to submit his request to the public-information officer at the institution where inmate was incarcerated).

{¶ 30} In this case, Clark sent his request for a copy of the ViaPath memorandum to the prison's mailroom department, and Holley, the mailroom-department supervisor at the prison, responded to that request. Clark has not submitted any evidence demonstrating that Holley was "the person responsible for public records," R.C. 149.43(C)(1). At best, Clark's evidence illustrates that Holley sent an electronic message to an inmate. For its part, DRC submitted evidence that Holley instructed Clark to send his request to Myers, who DRC contends is the person responsible for responding to inmate public-records requests at the prison. Clark, however, did not submit his request for the ViaPath

memorandum to Myers. Clark has therefore failed to show a violation of an obligation under R.C. 149.43(B).

### b. Commissary Receipts and Price Lists

{¶ 31} With respect to his commissary receipts and corresponding price lists, Clark argues in his merit brief that both Myers and Watts "have a duty to provide [him] with a paper copy of the record of the commissary price list upon request." He claims that Myers's duty flows from her status as the prison's public-information officer and that Watts's duty flows from his status as "an employee of the public office that both maintains and distributes the records that [he] requested."

{¶ 32} In support of the assertion that Watts's duty arises from his status as an employee of the public office that allegedly maintains and distributes the requested records, Clark refers to a previous decision of this court's that involved Clark and a records request sent to Watts. *See Clark*, 2024-Ohio-770 ("*Clark I*").

{¶ 33} In *Clark I*, we determined that Clark's requesting the commissary price lists from Watts satisfied the requirement under the Public Record Act's statutory-damages provision "to transmit the public-records request to the 'public office or person responsible for the requested public records.'" *Id.* at ¶ 14, quoting R.C. 149.43(C)(2). In that case, Clark sent an electronic kite to Watts, requesting that Watts send him "an up-to-date paper copy of the commissary price list for each commissary window." *Id.* at ¶ 2. Watts responded, writing that Clark could obtain the pricing "on J Pay." *Id.* Clark filed a mandamus action in this court, seeking "a writ of mandamus ordering [DRC] to provide him with copies of the requested records" and awards of statutory damages and court costs. *Id.* at ¶ 5.

{¶ 34} The mandamus claim in *Clark I* became moot when DRC provided Clark with paper copies of the requested records after the suit was filed. *Id.* at ¶ 5, 7. On the issue of statutory damages, DRC argued that Clark was not entitled to an award, because he did not submit "his public-records request to the correct records custodian," whom it identified as a warden's assistant who served as the prison's

public-information officer. *Id.* at ¶ 14. We rejected DRC's argument in part because the evidence in that case showed that the prison's commissary department maintained and distributed the price lists at issue. *Id.* We therefore determined that Clark was entitled to an award of statutory damages. *Id.* at ¶ 16-17.

{¶ 35} This case is distinguishable from *Clark I*. Our decision in that case was based on evidence that the prison's commissary department maintained and distributed the price lists at issue—i.e., the then-existing ("up-to-date") lists. *See Clark I*, 2024-Ohio-770, at ¶ 2, 14. But in this case, Clark has not submitted evidence that Watts, a commissary and cashier supervisor at the prison, is responsible for providing him with paper copies of the almost *three years'* worth of commissary receipts and corresponding price lists that he requested. Instead, Clark relies on evidence related to other public-records requests he has made, which he believes shows that Watts is responsible for the records he requested in this case. But none of this evidence related to other public-records requests establishes clearly and convincingly that Watts is the person responsible for providing Clark with paper copies of the commissary receipts and corresponding price lists that he requested.

{¶ 36} At most, Clark has shown that Watts responded to a request of Clark's for a copy of a commissary receipt from a certain date. This one response, however, does not establish by clear and convincing evidence that Watts is "a public office or the person responsible," R.C. 149.43(C)(1), for providing him with paper copies of almost three years' worth of commissary receipts and corresponding price lists. Accordingly, we deny the writ with respect to Clark's request for paper copies of his commissary receipts and corresponding price lists.

## C. Statutory Damages

{¶ 37} Although Clark's mandamus claim with respect to the "Legal Dockets" memorandum is moot, he may still be entitled to an award of statutory damages because of Myers's alleged failure to produce a paper copy of the

memorandum within a reasonable time of his request. *See State ex rel. Woods v. Lawrence Cty. Sheriff's Office*, 2023-Ohio-1241, ¶ 7 (request for statutory damages remains at issue even if mandamus claim moot); *State ex rel. Ware v. Galonski*, 2024-Ohio-613, ¶ 10 ("If a respondent takes an unreasonable amount of time to produce records in response to a public-records request, the relator may be entitled to an award of statutory damages even if the mandamus claim is moot.").

{¶ 38} Former R.C. 149.43(C)(2) (now R.C. 143.43(C)(3))[2] entitles a public-records requester to an award of statutory damages if the requester proves by clear and convincing evidence that (1) he transmitted a written public-records request by hand delivery, electronic submission, or certified mail, (2) he made the request to "the public office or person responsible for the requested public records," (3) he fairly described the records sought, and (4) "the public office or the person responsible for public records failed to comply with an obligation" under R.C. 149.43(B). *See State ex rel. Grim v. New Holland*, 2024-Ohio-4822, ¶ 6. Statutory damages accrue at $100 for each business day of noncompliance with R.C. 149.43(B)'s obligations, beginning on the day the requester files a mandamus action, up to $1,000. Former R.C. 149.43(C)(2) (now R.C. 149.43(C)(3)).

{¶ 39} Clark submitted his request for a paper copy of the "Legal Dockets" memorandum through the prison's electronic-kite system, satisfying the electronic-submission requirement. *See State ex rel. Griffin v. Sehlmeyer*, 2021-Ohio-1419, ¶ 21. Furthermore, Clark submitted his request to the "person responsible for the requested public records," R.C. 149.43(C)(2). Myers states in her affidavit that she is the prison's public-information officer and responds to inmate public-records

---

2. Effective April 9, 2025, R.C. 149.43 was amended such that a person committed to the custody of DRC is no longer eligible to receive an award of statutory damages under R.C. 149.43(C). 2024 Sub.H.B. No. 265. Here, however, we apply the version of R.C. 149.43(C) that was effective when Clark made his public-records request and filed his mandamus complaint. *See* 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

requests. And DRC has not claimed that Clark failed to fairly describe the records sought.

{¶ 40} DRC did not, however, fail to comply with an obligation under R.C. 149.43(B) when Myers asked Clark to prepay the costs of providing a paper copy of the "Legal Dockets" memorandum. R.C. 149.43(B)(6) allows "the public office or person responsible for the public record" to require that a requester "pay in advance the cost involved in providing the copy of the public record in accordance with the choice made by the requester under this division." Myers avers in her affidavit that Clark did not properly submit his cash slip to pay for the "Legal Dockets" memorandum and that her office never received the cash slip. Without receiving payment for the requested record, DRC did not have an obligation to provide it to Clark. *See State ex rel. Ware v. Giavasis*, 2020-Ohio-5453, ¶ 23.

{¶ 41} To be sure, Clark contradicts Myers's assertion by including in his evidence a copy of a cash slip purportedly indicating that he paid ten cents for a copy of the requested record. But the evidence is evenly balanced on whether Myers received the cash slip because according to Myers, Clark did not transmit the cash slip to her in the manner that he was instructed. When the evidence is evenly balanced, "the requester has not satisfied the heightened burden of proof necessary for an award of statutory damages." *Id.* at ¶ 32. We therefore deny Clark's request for statutory damages.

### D. Court Costs

{¶ 42} Clark also requests an award of court costs under R.C. 149.43(C)(1)(b). We deny that request because Clark filed an affidavit of indigency in this matter and, thus, there are no costs to award. *See Woods*, 2023-Ohio-1241, at ¶ 12.

### III. CONCLUSION

{¶ 43} For the foregoing reasons, we grant Clark's motion for leave to file proposed Exhibits 3 and 4 as rebuttal evidence but deny the motion with respect to

proposed Exhibits 1, 2, and 2-E. On the merits of Clark's mandamus claim, we deny the writ as moot with respect to the request for the "Legal Dockets" memorandum and deny the writ outright with respect to the other requests because Clark has failed to show a violation of the Public Records Act. Finally, we deny Clark's requests for statutory damages and court costs.

Writ denied.

_____

**KENNEDY, C.J., concurring in part and dissenting in part.**

{¶ 44} The language of R.C. 149.43(B)(1) is straightforward: subject to an exception not applicable here, "upon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." To whom *may* a public-records request be sent? R.C. 149.43(B)(1) answers, "a public office or person responsible for public records." And who *must* fulfill that request? R.C. 149.43(B)(1) answers, "a public office or person responsible for public records."

{¶ 45} So why then has this court consistently misunderstood the meaning of these simple, everyday words? The language used today in the majority opinion is telling. To whom *must* a public-records request for prison records be sent? The majority answers, "the person responsible *for responding to inmate public-records requests* at the prison." (Emphasis added.) Majority opinion, ¶ 3, 21, 26, 30.

{¶ 46} Like a magician who can't conceal her sleight of hand from the audience, the majority doesn't hide its distortion of the Public Records Act, R.C. 149.43. The majority has, in essence, amended R.C. 149.43(B)(1) to say, subject to an exception not applicable here, "upon request by any person, a public office or the person responsible for responding to public records requests shall make copies of the requested public record available to the requester at cost and within a

16

reasonable period of time." Instead of trying to play that shell game, I would simply apply the uncomplicated language that the General Assembly has enacted.

{¶ 47} In this case, relator, Thomas Clark, submitted each of his three public-records requests not only to a public office but to a specific person at the public office who looked after and kept the records he sought. He asked for copies of commissary receipts of his purchases and commissary price lists from a commissary and cashier supervisor at the Lebanon Correctional Institution ("the prison"), but his request was denied. He sought a copy of a mailroom-department memorandum from the mailroom-department supervisor at the prison, but his request was denied. And even when Clark submitted a request for a copy of a legal-dockets memorandum to "the person responsible for responding to inmate public-records requests at the prison," majority opinion at ¶ 3, 21, 26, 30, that person still denied his request. These employees and respondent, the Ohio Department of Rehabilitation and Correction ("DRC"), plainly violated the Public Records Act.

{¶ 48} I agree with the majority that Clark's request for a copy of the legal-dockets memorandum is moot. *See id.* at ¶ 25. But I would grant his motion for leave to file rebuttal evidence in full and would award him statutory damages in the amount of $3,000 as "compensation for injury arising from lost use of the requested information," former R.C. 149.43(C)(2) (now R.C. 149.43(C)(3)).[3]

{¶ 49} Accordingly, I concur in part and dissent in part.

### The Public Records Act

{¶ 50} "'[P]ublic records are the people's records.'" *State ex rel. Patterson v. Ayers*, 171 Ohio St. 369, 371 (1960), quoting 35 Ohio Jur., Records, § 41, at 45 (1934). In 1963, "the General Assembly codified the public's right to access of

---

[3]. Effective April 9, 2025, R.C. 149.43 was amended such that a person committed to the custody of DRC is no longer eligible to receive an award of statutory damages under R.C. 149.43(C). 2024 Sub.H.B. No. 265. This separate opinion, however, applies the version of R.C. 149.43(C) that was effective when Clark made his public-records request and filed his mandamus complaint. *See* 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

government records" by enacting R.C. 149.43. *State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland*, 38 Ohio St.3d 79, 81 (1988). The Public Records Act reflects the State's policy that "open government serves the public interest and our democratic system," *State ex rel. Dann v. Taft*, 2006-Ohio-1825, ¶ 20, and "reinforce[s] the understanding that open access to government papers is an integral entitlement of the people, to be preserved with vigilance and vigor," *Kish v. Akron*, 2006-Ohio-1244, ¶ 17.

**{¶ 51}** R.C. 149.43(B)(1) states that subject to an exception not applicable here, "upon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time."

**{¶ 52}** R.C. 149.43(B)(1) provides when copies must be made—"upon request." It says to whom the request may be sent—"a public office or person responsible for public records." And it dictates who must fulfill the request—again, "a public office or person responsible for public records." Importantly, R.C. 149.43(B)(1) uses the word "a" in the phrase "a public office or person," not "the." The word "a" is an indefinite article meaning "any" and applying to more than one thing. *See United States v. Alabama*, 778 F.3d 926, 933 (11th Cir. 2015). In contrast, the definite article "the" specifies the object and refers to a discrete thing. *See Niz-Chavez v. Garland*, 593 U.S. 155, 165 (2021). So R.C. 149.43(B)(1) permits a public-records request to be sent to *any* person responsible for the requested public record, and *any* person responsible for the requested public record who receives the request is required to fulfill it.

**{¶ 53}** And the "use of the word 'or,' a disjunctive term, signifies the presence of alternatives." *In re Estate of Centorbi*, 2011-Ohio-2267, ¶ 18; *see also* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, 116 (2012). R.C. 149.43(B)(1) therefore imposes duties on both a public office and any person responsible for public records at a public office, and one *or* the other must fulfill a

18

valid public-records request.  So even when the person who receives the request is not able to fulfill it, the public office is still liable to produce the record, and the request must be sent to the person who can fulfill it.

*Responsible for Public Records*

**{¶ 54}** The next question is who is "responsible" for public records? "Responsible" means "[h]aving a duty to be in charge of something or to look after someone or something." *Black's Law Dictionary* (12th Ed. 2024).  And our cases have frequently referred to the person responsible for public records as being the "'public-records custodian.'"  *E.g.*, *State ex rel. Copley Ohio Newspapers, Inc. v. Akron*, 2024-Ohio-5677, ¶ 11, quoting *State ex rel. Miller v. Ohio State Hwy. Patrol*, 2013-Ohio-3720, ¶ 23.  So a person responsible for public records is a person who looks after and keeps those records.

**{¶ 55}** There is a difference between being a person responsible for public records—someone who looks after and keeps them—and being a person responsible for responding to public-records requests.  Those are not necessarily the same person.  For this reason, the majority's assertion that a prison may require inmates to submit requests for a prison's public records to "the person responsible for responding to inmate public-records requests at the prison," majority opinion at ¶ 3, 21, 26, 30, is a nonstarter.  The requests may be submitted to any person responsible for public records or to a public office, which necessarily acts through its officials and employees.

*Duties upon Receiving a Public-Records Request*

**{¶ 56}** When a request is made to a public office or person responsible for public records, the Public Records Act dictates certain actions that the public office—again, necessarily acting through its officials and employees—or the person responsible for the requested public record must take.

**{¶ 57}** A public office or person responsible for public records must make the copies of the requested public records available to the requester at cost and

within a reasonable period, *unless* the records contain information that is exempt from production, R.C. 149.43(B)(1), the requester makes an "ambiguous or overly broad" request, R.C. 149.43(B)(2), or the public office or the person responsible for the requested public record cannot reasonably identify what public records are being requested, *id.*

{¶ 58} If the requester makes an ambiguous or overly broad public-records request or the public office or the person responsible for the requested public record cannot reasonably identify what public records are being requested, then the public office or the person responsible for the requested public record may deny the request. R.C. 149.43(B)(2). But that is not all the public office or the person responsible for the requested public record must do. In response to the request, "the public office or the person responsible for the requested public record . . . shall provide the requester with an opportunity to revise the request by informing the requester of the manner in which records are maintained by the public office and accessed in the ordinary course of the public office's or person's duties." *Id.* The public office or the person responsible for the requested public record cannot just say "denied."

{¶ 59} And "[i]f a request is ultimately denied, in part or in whole, the public office or the person responsible for the requested public record shall provide the requester with an explanation, including legal authority, setting forth why the request was denied." R.C. 149.43(B)(3). "If the initial request was provided in writing, the explanation also shall be provided to the requester in writing." *Id.*

{¶ 60} What the public office or the person responsible for the requested public record cannot do is ignore or deny a request without explanation. Understanding this, this opinion now addresses Clark's particular requests as they fit within this framework.

### Analysis of Clark's Public-Records Requests

*ViaPath Memorandum*

**{¶ 61}** Start with the easy one first. Clark made a request for "a paper copy of the LECI Mail Department memorandum addressed to inmates in regards to the 'ViaPath pictures and media review process' from February 22, 2024." "Holley, B." denied the request outright—he did not even direct Clark to "the person responsible for responding to inmate public-records requests at the prison," majority opinion at ¶ 3, 21, 26, 30. Holley did not say that the request was ambiguous or overly broad, nor did he say that he could not reasonably identify what public records were being requested. He did not invite Clark to revise his request. Holley also did not provide an explanation, including legal authority, for the denial of the request. He just wrote, "I will not provdied [sic] a copy."

**{¶ 62}** The majority does not dispute that "Clark sent his request for a copy of the ViaPath memorandum to the prison's mailroom department, and Holley, the mailroom-department supervisor at the prison, responded to that request." *Id.* at ¶ 30. Further, the memorandum that Clark sought plainly came from the mailroom department—Holley apparently copied and pasted the text of the memorandum into his response to Clark's request, and the memorandum ends by saying "Mailroom Department."

**{¶ 63}** The majority, however, says that "Clark has not submitted any evidence demonstrating that Holley was 'the person responsible for public records.'" *Id.*, quoting R.C. 149.43(C)(1). However, we do not have to check common sense at the courthouse door. Holley copied and pasted from the requested record, quoting the memorandum in his response to Clark's request. And the subject of the memorandum had to do with the mailroom department reviewing pictures and videos that ViaPath had denied sending to inmates. Also, Holley was the mailroom-department supervisor, and it is not a stretch of the imagination to infer that the mailroom-department supervisor would be the one who looks after

and keeps mailroom-department records. Therefore, it is manifest that Holley was a person responsible for public records kept by the prison's mailroom department.

{¶ 64} But even if Holley had no control over or access to the ViaPath memorandum, that is not the end of the analysis. Remember that it is "a public office or person responsible for public records [that must] make copies of the requested public record," R.C. 149.43(B)(1). A public office—whether delineated as the mailroom department, the prison, or DRC—received a public-records request, and Holley denied it without explanation or justification on behalf of the public office. That is a violation of a duty owed under R.C. 149.43(B).

{¶ 65} Consequently, Clark is entitled to a writ of mandamus compelling DRC to produce a copy of the ViaPath memorandum, and he is eligible for statutory damages under former R.C. 149.43(C)(2) (now R.C. 149.43(C)(3)). And because I would not reduce the amount of statutory damages under former R.C. 149.43(C)(2)(a) and (b) (now R.C. 149.43(C)(3)(a) and (b))—a well-informed public office or person responsible for the requested public records would have known to fulfill Clark's request or respond appropriately—Clark is entitled to statutory damages in the amount of $1,000 for the wrongful denial of his request for a copy of the ViaPath memorandum.

*Commissary Receipts and Price Lists*

{¶ 66} In March 2024, Clark sent an electronic kite to Ron Watts, seeking copies of receipts of his purchases at the prison's commissary store from May 2021 to the date of his request and commissary price lists for each corresponding receipt date. According to Clark, Watts is a commissary and cashier supervisor at the prison. Watts responded to the kite, telling Clark that he had to request these records through Ellen Myers, the warden's assistant. Because Watts did not provide the requested records, he effectively denied Clark's public-records request. Watts never said that he had no control over or access to the requested records, nor

did he assert that the records request was ambiguous or overly broad or otherwise justify the denial of the request.

{¶ 67} As evidence, Clark submitted an October 2023 kite in which he requested a paper copy of a commissary price list, and Myers responded by directing Clark to "[s]ee your unit staff for a copy or kite the commissary department." Clark also submitted evidence of a September 2022 exchange with Watts in which Watts informed Clark that the price list for each commissary window was available on "J Pay." Clark also presented a March 2024 kite in which he sought a paper copy of a commissary receipt, and Watts responded to the request, writing, "It will be sent to you." Clark included the receipt as evidence, showing that he had received it.

{¶ 68} Taken together, all this indicates that someone at the commissary store—if not Watts himself—received the public-records request at issue here and could have provided the records Clark requested or otherwise responded appropriately to the request. No one did that.

{¶ 69} But even if someone at the commissary store could not have provided copies of the requested commissary receipts and price lists to Clark—which seems farfetched—that did not absolve DRC of its duties under the Public Records Act. Under R.C. 149.43(B)(1), two entities have a shared duty to respond to public-records requests—"a public office or person responsible for public records." When a public-records request is made to someone at a public office, even if not to a person responsible for public records at that public office, a request has still been made of the public office. And once a public-records request has been made of a public office, someone must respond to it. If no one does, then the public office has violated the Public Records Act.

{¶ 70} Watts received a public-records request on behalf of a public office. He did not fulfill the request, nor did he submit it to someone who could. He instead

denied it without explanation or justification on behalf of the public office. That is a violation of a duty owed under R.C. 149.43(B).

{¶ 71} Consequently, Clark is entitled to a writ of mandamus compelling DRC to produce copies of the requested commissary receipts and price lists, and he is eligible for statutory damages under R.C. 149.43(C)(2). And because I would not reduce the amount of statutory damages under R.C. 149.43(C)(2)(a) and (b)— a well-informed public office or person responsible for the requested public records would have known to fulfill Clark's request or respond appropriately—Clark is entitled to statutory damages in the amount of $1,000 for the wrongful denial of his request for copies of commissary receipts and price lists.

*"Legal Dockets" Memorandum*

{¶ 72} No one disputes that Clark made a valid public-records request for the legal-dockets memorandum—he sent his request to Myers, who is supposedly "the person responsible for responding to inmate public-records requests at the prison," majority opinion at ¶ 3, 21, 26, 30. The sole question is whether Clark submitted a "cash slip" to pay for the record he requested.

{¶ 73} After Clark sent her a kite requesting the legal-dockets memorandum, Myers told him to send her a cash slip for ten cents. Notably, in her response to Clark's request, Myers did not tell him how to submit a cash slip to her. As evidence, Clark submitted a copy of the cash slip. Contrary to her averment in her affidavit that "Clark's cash slip[] [was] not sent to the attention of a particular individual, such as me," the cash slip is addressed as follows: "To: Mrs. Ellen Myers, Asst. Warden." The cash slip also specifically references Clark's request for the legal-dockets memorandum. The money-amount field says ten cents, and a stamp on the cash slip indicates that it was paid. And Myers admits that the cash slip was processed. Myers has no explanation for why a cash slip addressed to her failed to reach her office, especially since Myers claims that a similar incident

24

involving another cash slip for copies of records not reaching her office happened around the same time that the cash slip at issue in this case was processed.

{¶ 74} The evidence shows that the prison took prepayment for the requested record and that the cash slip was addressed to Myers. The majority is therefore wrong when it says that DRC did not receive payment for the record and for that reason did not have to fulfill the request. *See* majority opinion at ¶ 40. Instead, Clark made a valid public-records request and paid the public office for a copy of the requested record. At that point, his right to a copy of the record became absolute, yet neither Myers nor anyone else at the prison fulfilled the request. R.C. 149.43(B) was violated, entitling Clark to statutory damages under R.C. 149.43(C)(2). (He has received a copy of the legal-dockets memorandum, so his request for a writ of mandamus as to that record is moot.) Since neither of the reduction factors in R.C. 149.43(C)(2)(a) and (b) apply, Clark is entitled to statutory damages in the amount of $1,000 for the wrongful denial of his request for a copy of the legal-dockets memorandum.

### Conclusion

{¶ 75} Clark made three separate public-records requests, and DRC failed to respond appropriately to each one. Based on these violations of R.C. 149.43(B), I would award Clark $3,000 in statutory damages.

{¶ 76} For the reasons stated above, I concur in part and dissent in part.

_____

Thomas Clark, pro se.

Dave Yost, Attorney General, and D. Chadd McKitrick, Assistant Attorney General, for respondent.

_____

25