**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Clark v. Dept. of Rehab. & Corr.*, Slip Opinion No. 2025-Ohio-1611.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-1611

THE STATE EX REL. CLARK *v.* DEPARTMENT OF REHABILITATION AND CORRECTION.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Clark v. Dept. of Rehab. & Corr.*, Slip Opinion No. 2025-Ohio-1611.]

*Mandamus—Public-records requests—R.C. 149.43—Inmate failed to show violation of Public Records Act when he was directed to submit his records request to proper office or to where the record may be located or to person responsible for the record—Writ and requests for statutory damages and court costs denied.*

(No. 2024-0533—Submitted January 7, 2025—Decided May 7, 2025.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.  KENNEDY, C.J., concurred in part and dissented in part, with an opinion.

**Per Curiam.**

**{¶ 1}** Relator, Thomas Clark, seeks a writ of mandamus ordering respondent, the Ohio Department of Rehabilitation and Correction ("DRC"), to provide records under Ohio's Public Records Act, R.C. 149.43. Clark also seeks statutory damages of $6,000 for the six public-records requests he alleges DRC either denied or ignored. Clark has also filed a motion for leave to file rebuttal evidence.

**{¶ 2}** We grant in part Clark's motion for leave to file rebuttal evidence. But because Clark has failed to show a violation of the Public Records Act, we deny the writ and deny his request for statutory damages.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**{¶ 3}** Clark is incarcerated at the Lebanon Correctional Institution ("LCI"). According to his mandamus complaint, Clark was previously incarcerated at North Central Correctional Complex ("NCCC") from October 2020 to April 2021. This case relates to six public-records requests that Clark claims to have sent to either NCCC or LCI between October 2020 and March 2024.

### A. The 2020 and 2021 Requests from NCCC

**{¶ 4}** Clark alleges that from October 2020 through January 2021, he repeatedly sent requests by electronic kite[1] to a unit manager named Ms. Jones for a copy of a "theft/loss report" that Clark filled out when some of his personal property was stolen by other inmates. Clark also claims that in October 2020, he sent by electronic kite a separate request to a different NCCC unit manager named Mr. Starcher for another "theft/loss report" he filled out when other property was stolen. He also alleges that beginning in February 2021, he repeatedly requested a copy of the NCCC inmate handbook. Finally, Clark contends that in March 2021,

---

1. "A kite is a type of written correspondence between an inmate and prison staff." *State ex rel. Griffin v. Szoke*, 2023-Ohio-3096, ¶ 3.

he sent an electronic kite to Lorri Shuler at NCCC, requesting a copy of a document Clark had signed to acknowledge receipt of unspecified documents he had requested from Shuler. According to Clark, copies of these requested records were never provided to him.

{¶ 5} Clark has not submitted copies of his 2020 and 2021 requests. To support his contention that prison officials at NCCC did not respond to those requests, Clark has instead submitted a copy of a separate request he sent by electronic kite in March 2024 to an inspector at LCI. In that kite, Clark requested paper copies of 17 kites, including 13 that he had allegedly sent to either Jones, Starcher, or Shuler at NCCC between October 2020 and March 2021. The March 2024 kite, however, does not reveal the contents of the 2020 and 2021 kites that it references.

*B. The 2022 Request—LCI Chow-hall Menus*

{¶ 6} In April 2022, after Clark was transferred to LCI, Clark sent electronic kites to LCI's food-service department, requesting copies of the "chow hall menu," specifically, copies of "all three weeks of the current seasonal menu." About two weeks after Clark's request, food-service-department employee Robert Flowers responded by electronic kite, informing Clark that the menus were posted in the chow halls.

{¶ 7} In May 2022, Clark responded to Flowers's kite, explaining: "The menus are only posted in chow hall one. Therefore, if a person does not eat in chow hall one, they do not have access to [them]." And because, according to Clark, inmates are not always permitted to eat in chow-hall one, he reiterated his request for a copy of the menus. Flowers responded nine days later that Clark would not be provided with a copy of the menu and suggested that he "write down the menu" when he comes to the chow hall.

{¶ 8} Ellen Myers, the public-information officer at LCI, avers in an affidavit that the standard protocol for inmate public-records requests is to send the

request to the institution's public-information officer. According to Myers, Clark did not send his records request for menus "to the right person who is responsible for responding to inmate public-records requests." Specifically, Clark did not send his request to Myers. Myers also states that Clark had been advised on a previous occasion that LCI does not maintain the menus. According to Myers, the dietary-operations manager from the Office of Correctional Healthcare ("OCHC") is the records custodian responsible for maintaining them.

### C. The 2024 Request—LCI Mail Policies

{¶ 9} In March 2024, Clark sent an electronic kite to Lieutenant B. Holley, a supervisor at LCI's mailroom department, requesting a paper copy of the policies and procedures for processing incoming and outgoing mail for inmates. Holley responded four days later, instructing Clark to submit his request "to the inspector's office." Clark did not follow Holley's instruction; rather, Clark contends that Holley is the custodian of the requested records.

{¶ 10} According to Myers, however, Holley is not the public-information officer to whom a public-records request should be directed under DRC's public-records policy; rather, Myers contends that she is the public-information officer and that Clark's request should have been directed to her.

### D. Clark Files this Action

{¶ 11} Clark filed this original action in April 2024, seeking a writ of mandamus ordering DRC to provide him with paper copies of the aforementioned records he allegedly requested and did not receive from personnel at NCCC and LCI. Clark also demands $6,000 in statutory damages and recovery of his court costs. DRC filed a motion to dismiss, which we denied. 2024-Ohio-2781. We granted an alternative writ. *Id.*

{¶ 12} In addition to his evidence and merit brief, Clark has filed a motion for leave to file rebuttal evidence. Clark asks the court to admit Exhibits A-1, A-2,

2, 2-A, 2-B, 2-C, and 2-E as evidence to rebut DRC's evidence, which consists of Myers's affidavit. DRC opposes the motion for leave.

## II. ANALYSIS

### A. *Motion for Leave to File Rebuttal Evidence*

**{¶ 13}** Our rules permit a relator in an original action to seek leave to file rebuttal evidence. Rule 12.06(B). Rebuttal evidence "is that given to explain, refute, or disprove new facts introduced into evidence by the adverse party; it becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence." *State v. McNeill*, 1998-Ohio-293, ¶ 44.

### 1. *Exhibits 2-A, 2-B, and 2-C*

**{¶ 14}** Clark offers Exhibits 2-A, 2-B, and 2-C to rebut Myers's affidavit, which DRC submitted as evidence. Myers testifies that Clark did not submit his request for chow-hall menus to her and that, in any event, his request was properly denied because LCI does not maintain the menus. To the latter point, Myers asserts that "[t]he Dietary Operations Manager from the [OCHC] is the *records custodian* that is responsible for maintaining [the menus]." (Emphasis in original.)

**{¶ 15}** Clark offers Exhibits 2-A, 2-B, and 2-C in response to Myers's testimony that LCI does not maintain the menus. Exhibit 2-A is a copy of a "master menu" from a different period that identifies the document as DRC Form 1181, and Exhibit 2-B is a copy of two pages from DRC Policy No. 60-FSM-02 (effective Feb. 22, 2022), which establishes procedures for food-service operations within the prison system and references DRC Form 1181. Exhibit 2-C is a copy of an electronic kite in which Clark requested a paper copy of the summer 2024 master chow-hall menu, to which Holley responded by referring Clark to his "unit staff."

**{¶ 16}** Clark contends that these documents show that the menus are records of the prison and that LCI has access to them. Because these documents are submitted for an appropriate rebuttal purpose, i.e., to show that LCI has control over the chow-hall menus Clark requested, we grant the motion for leave as to Exhibits 2-

A, 2-B, and 2-C. *See State ex rel. Mobley v. Powers*, 2024-Ohio-104, ¶ 18 (motion for leave to admit documents as rebuttal evidence granted because documents tended to refute respondent's claim that he gave relator the records he had requested).

### *2. Exhibits A-1, A-2, 2, and 2-E*

{¶ 17} Clark also proffers Exhibit 2 as rebuttal evidence to show that LCI has access to the chow-hall menus and could have provided them in response to his public-records request. Clark, however, already submitted Exhibit 2 as part of his initial evidence submission. Accordingly, we deny Clark's motion as to Exhibit 2 because it is already in evidence.

{¶ 18} Clark also seeks leave to file Exhibits A-1 and A-2 to rebut Myers's affidavit testimony that he must prepay for copies of records before he is entitled to receive them. Clark proffers Exhibits A-1 and A-2, which purportedly show that Clark is normally advised of the cost to copy the records, which then enables him to obtain a cash slip for the cost. Exhibit A-1 is a copy of kite correspondence between Clark and Myers, in which Clark requested a paper copy of records and to which Myers responded with the cost of copying the records; Exhibit A-2 is the copy of the subsequent cash slip that Clark obtained after being advised of the cost. Clark argues that these documents show that for the records requests at issue in this case, LCI did not properly advise him of the cost to copy the records even after he had offered to pay for them.

{¶ 19} We deny the motion as to Exhibits A-1 and A-2. Though Myers testifies that Clark did not tender the cost of the copies he requested, DRC does *not* raise Clark's failure to do so as a reason to deny the writ. Myers's testimony on this point is not at issue; therefore, rebuttal evidence is not necessary on this point.

{¶ 20} Finally, we deny the motion for leave to file Exhibit 2-E as rebuttal evidence. Exhibit 2-E is a kite communication, which Clark proffers as evidence that Myers is not the actual custodian of records but, rather, that she often obtains the records from the actual custodian. But Exhibit 2-E does not explain, disprove, or

refute Myers's testimony that she is the public-information officer responsible for preparing responses to public-records requests.

### B. Mandamus

{¶ 21} "[U]pon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1). Mandamus is an appropriate remedy to compel compliance with the Public Records Act. R.C. 149.43(C)(1)(b). To obtain a writ of mandamus, Clark must show by clear and convincing evidence that he has a clear legal right to the relief he requests and that DRC has a clear legal duty to provide it. *State ex rel. Clark v. Dept. of Rehab. & Corr.*, 2024-Ohio-770, ¶ 6.

### 1. The NCCC Requests (2020 to 2021)

{¶ 22} In a public-records mandamus action, the requester must plead and prove facts showing that he requested a public record in accordance with R.C. 149.43(B)(1) and that the public office or records custodian did not make the record available. *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 26. "The burden of persuasion is on the requester to establish entitlement to the extraordinary writ by clear and convincing evidence." *Id.*, citing *State ex rel. Kesterson v. Kent State Univ.*, 2018-Ohio-5108, ¶ 12, and *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 2012-Ohio-4246, ¶ 16. In this case, Clark has not proven that he sent the 2020 and 2021 public-records requests alleged in his complaint.

{¶ 23} Clark claims to have sent four public-records requests by electronic kite to personnel at NCCC between October 2020 and March 2021. But Clark has not submitted a copy of any of these alleged requests or any other evidence showing that he sent electronic kites requesting the documents he describes in his complaint. His only evidence supporting these allegations is a different electronic kite sent to an LCI inspector in March 2024, in which Clark requested copies of 13 electronic kites

he transmitted while at NCCC from October 2020 to March 2021. But this evidence does not show what was contained in the NCCC kites, much less whether any of them contained public-records requests. Clark has therefore failed to meet his burden of showing that he transmitted the NCCC requests alleged in his complaint. *See State ex rel. Mobley v. Toledo*, 2022-Ohio-3889, ¶ 12 (relator did not prove by clear and convincing evidence that he sent a public-records request by certified mail when he failed to submit "a copy of his alleged request or any other evidence showing that he mailed the request described in [the] complaint").

### 2. The LCI Requests (2022 and 2024)

{¶ 24} Clark's requests from April 2022 and March 2024 relate to records he requested from LCI staff members by electronic kite. Unlike the NCCC requests, Clark has submitted evidence showing that he sent the LCI requests by electronic kite. In April 2022, Clark requested from LCI's food-service department a copy of chow-hall menus covering a three-week period. And in March 2024, Clark requested from LCI's mailroom department a copy of the institution's policies and procedures relating to inmates' incoming and outgoing mail. According to Clark, LCI personnel have not produced the requested records to him.

{¶ 25} DRC does not dispute that it has not provided the chow-hall menus or the mail policies to Clark. However, DRC contends that Clark is not entitled to a writ of mandamus for these requests because, according to Myers, Clark "did not deliver his request[s] to the right person who is responsible for responding to inmate public records requests."

{¶ 26} Myers attests that she is LCI's public-information officer and that the public-information officer is the person responsible for responding to public-records requests from inmates. However, Clark did not transmit his public-records requests to her. Moreover, as to the chow-hall menus, Myers attests that LCI is not even the custodian of those records; rather, she says that the dietary-operations manager of the OCHC is the person responsible for maintaining them.

8

**{¶ 27}** We must determine whether DRC failed to comply with an obligation to make the requested records available to Clark under R.C. 149.43(B)(1). *See Welsh-Huggins*, 2020-Ohio-5371, at ¶ 26.

**{¶ 28}** R.C. 149.43(B)(1) states:

> Upon request by any person . . . all public records responsive to the request shall be promptly prepared and made available for inspection to the requester at all reasonable times during regular business hours. . . . [U]pon request by any person, *a public office or person responsible for public records* shall make copies of the requested public record available to the requester at cost and within a reasonable period of time.

(Emphasis added.) In turn, R.C. 149.43(C)(1) grants a remedy, including a writ of mandamus, to a person "aggrieved by the failure *of a public office or the person responsible for public records* . . . to comply with an obligation in accordance with [R.C. 149.43(B)]." (Emphasis added.) Read together, these two provisions make clear that relief under the Public Records Act is available only when a public office or person responsible for public records has failed to comply with an obligation under R.C. 149.43(B). *See State ex rel. Berry v. Booth*, 2024-Ohio-5774, ¶ 16 (denying writ of mandamus when relator failed to meet his burden to show that he requested the records at issue from a public office or the person responsible for public records).

**{¶ 29}** Although R.C. 149.43 imposes obligations on public offices and persons responsible for public records, "that does not mean that every employee . . . of a public office who receives a public-records request must directly respond to the request." *State ex rel. Ware v. Dept. of Rehab. & Corr.*, 2024-Ohio-1015, ¶ 32 (lead opinion); *see also id.* at ¶ 53 (DeWine, J., concurring in part and dissenting in part) ("There is nothing unreasonable or unlawful about a prison establishing a point of

contact who is responsible for responding to public-information requests."). Thus, it is not a violation of the Public Records Act when an employee not responsible for a public-records request directs the requester to the proper office or to where the record may be located or to the person responsible for the public record. *Id.* at ¶ 33 (lead opinion); *see also State ex rel. Griffin v. Szoke*, 2023-Ohio-3096, ¶ 9 (inmate failed to show violation of the Public Records Act when the recipient of his kite responded by telling inmate that he had to submit his request to the public-information officer at the institution from which he sought the records).

{¶ 30} In this case, regarding Clark's request for the chow-hall menus, Flowers declined to provide them to Clark, telling him that they were posted and that he should write them down when he came to the chow hall. Clark characterizes this as a denial of his public-records request for the chow-hall menus. However, Myers avers that Clark was previously advised that LCI does not maintain the menus. According to Myers, Clark was previously advised to obtain menus from DRC's contracted food-service company, Aramark. This is because, Myers attests, the dietary-operations manager from the OCHC is responsible for maintaining the records and who then communicates with Aramark "for ensuring compliance with the food cycle menu." Because Clark had been previously advised that LCI does not maintain the menus, he has not shown that Flowers's refusal to provide copies was a denial of his request in this case.

{¶ 31} Clark does not refute Myers's testimony that he was previously advised that LCI does not maintain the chow-hall menus. Rather, he offers evidence that LCI staff has access to the menus and could have provided copies to him. But the Public Records Act places the burden of producing a copy of a requested record on the "public office or person responsible for [the] public records." R.C. 149.43(B)(1). In this case, Clark does not dispute Myers's testimony that he had been advised that LCI does not maintain the menus and that he should obtain copies of them elsewhere. Clark nonetheless directed his kite to

the food-service department at LCI.  Clark has therefore not shown that DRC failed to comply with an obligation to provide him with copies of the chow-hall menus.

**{¶ 32}** This case is distinguishable from *State ex rel. Clark v. Dept. of Rehab. & Corr.*, 2025-Ohio-895, which involves the same relator and a different request for a chow-hall menu from LCI.  In that case, we granted a limited writ ordering DRC either to (1) notify Clark of the copying costs for the menu and provide a copy upon the payment of the costs or (2) certify by affidavit that DRC does not possess or control the menu.  *Id.* at ¶ 20.  But in that case, Clark directed his records request to the prison employee responsible for responding to public-records requests and the evidence in that case was not clear on the issue whether DRC possessed or controlled the master menu Clark requested.  In this case, however, Clark submitted his request to a food-service-department employee—Flowers—who is not responsible for records at LCI.

**{¶ 33}** As for the request for inmate-mail policies, Holley directed Clark to submit his request "to the inspector's office."  There is no evidence in the record that Clark heeded Holley's direction to submit his request to the inspector's office.  Rather, Clark argues that he properly submitted his request to Holley because "the [LCI] Mailroom Department is a public office for purposes of Ohio's Public Records Act."  This contention is without merit.  For one thing, "public office" is defined by the public-records statute as "any state agency, public institution, political subdivision, or other organized body, office, agency, institution, or entity *established by the laws of this state* for the exercise of any function of government."  (Emphasis added.)  R.C. 149.011(A).  Clark does not direct this court to any statute establishing an institutional mailroom as a public office separate from the institution itself.  And even if the mailroom were a separate "public office," the Public Records Act was not violated when Holley directed Clark to the appropriate office or custodian from whom to obtain the requested record.  *See Griffin v. Szoke*, 2023-Ohio-3096, at ¶ 9-10.

*C. Statutory Damages*

{¶ 34} Former R.C. 149.43(C)(2) (now R.C. 149.43(C)(3))[2] entitles a public-records requester to receive statutory damages if (1) he made a public-records request by one of the statutorily prescribed methods, (2) he made the request "to the public office or person responsible for the requested public records," (3) he fairly described the documents being requested, and (4) the public office failed to comply with its obligations under R.C. 149.43(B).  For the reasons above, Clark has not established that DRC failed to comply with R.C. 149.43(B).  Accordingly, Clark is not entitled to statutory damages.

{¶ 35} Clark also asks for recovery of court costs.  However, because we deny the writ, Clark is not entitled to an award of court costs under former R.C. 149.43(C)(3)(a)(i) (now R.C. 149.43(C)(4)(a)(i)).  *See State ex rel. Mobley v. LaRose*, 2024-Ohio-1909, ¶ 16.  And in any event, because he filed an affidavit of indigency and therefore had no obligation to pay costs, there are no costs to award. *See id.*

## III.  CONCLUSION

{¶ 36} We grant Clark's motion for leave to file rebuttal evidence as to exhibits 2-A, 2-B, and 2-C and deny the motion as to exhibits A-1, A-2, 2, and 2-E.  But because Clark has not shown entitlement to relief, we deny the writ and deny his requests for statutory damages and court costs.

Writ denied.

_____

**KENNEDY, C.J., concurring in part and dissenting in part.**

{¶ 37} Public records are exactly that—our records.  The text of R.C. 149.43(B)(1) could not be plainer: "[U]pon request by any person, a public office

_____

2. Effective April 9, 2025, R.C. 149.43 was amended such that a person committed to the custody of the Department of Rehabilitation and Correction is no longer eligible to receive an award of statutory damages under R.C. 149.43(C).  2024 Sub.H.B. No. 265.

or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time," subject to an exception not applicable to this case. That means a public-records request may be sent to any person responsible for the requested record, and the person who received the request must then fulfill that request in a timely manner. Otherwise, the public office itself must take steps to ensure that the request is fulfilled.

{¶ 38} The majority sees no problem in allowing the Lebanon Correctional Institution ("LCI" or "the prison") to shift the responsibility of responding to a public-records request away from "a public office or person responsible for public records" to the person designated by LCI to be *responsible for responding* to public-records requests. But a public office does not have the authority to limit to whom a request may be made—that power belongs to the General Assembly. And while the majority might be willing to twist the General Assembly's words, I would apply the statute as written.

{¶ 39} Nonetheless, the majority gets to the right result for some of the records that relator, Thomas Clark, requested. Clark has failed to substantiate his claim that he requested various public records from the North Central Correctional Complex in 2020 and 2021, so he is not entitled to a writ of mandamus compelling respondent, the Ohio Department of Rehabilitation and Correction ("DRC"), to produce those records or for an award of statutory damages for DRC's alleged failure to produce those records.

{¶ 40} I part ways with the majority regarding its analysis of the requests Clark submitted to employees at LCI. He sent his request for a copy of the chow-hall menu to the prison's food-service department. He also requested a copy of prison mailroom policies and procedures from the mailroom. Clark therefore submitted these requests to the exact departments in LCI—a public office—that uses those records for its day-to-day operations. The prison's employees plainly

violated the Public Records Act, R.C. 149.43, when they did not produce the requested records.

{¶ 41} I would therefore grant a writ of mandamus compelling DRC to provide copies of the records Clark requested from LCI or to certify that they no longer exist, and I would award Clark $2,000 in statutory damages as "compensation for injury arising from lost use of the requested information," former R.C. 149.43(C)(2) (now R.C. 149.43(C)(3)).[3]

{¶ 42} For these reasons, I concur in part and dissent in part.

### The Public Records Act

{¶ 43} "'The rule in Ohio is that public records are the people's records.'" *State ex rel. Patterson v. Ayers*, 171 Ohio St. 369, 371 (1960), quoting 35 Ohio Jur., Records, § 41, at 45 (1934). "The Public Records Act codifies this right to access government records," *State ex rel. Cincinnati Enquirer v. Dept. of Pub. Safety*, 2016-Ohio-7987, ¶ 32, and furthers "the societal interest in keeping governmental records open," *State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland*, 38 Ohio St.3d 79, 81 (1988). "[O]pen government serves the public interest and our democratic system," *State ex rel. Dann v. Taft*, 2006-Ohio-1825, ¶ 20, and "reinforce[s] the understanding that open access to government papers is an integral entitlement of the people, to be preserved with vigilance and vigor," *Kish v. Akron*, 2006-Ohio-1244, ¶ 17.

{¶ 44} "As in any statutory construction case, '[w]e start, of course, with the statutory text.'" (Bracketed text in original.) *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013), quoting *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006). R.C. 149.43(B)(1) states that subject to an exception inapplicable here, "upon request by any person, a public office or person responsible for public records shall make

---

3. Effective April 9, 2025, R.C. 149.43 was amended such that a person committed to the custody of DRC is no longer eligible to receive an award of statutory damages under R.C. 149.43(C). 2024 Sub.H.B. No. 265.

copies of the requested public record available to the requester at cost and within a reasonable period of time."

{¶ 45} R.C. 149.43(B)(1) provides when copies must be made—"upon request." It says to whom the request may be sent—"a public office or a person responsible for public records." And it dictates who must fulfill the request—again, "a public office or a person responsible for public records." Importantly, R.C. 149.43(B)(1) uses the word "a" in the phrase "a public office or person," not "the." The word "a" is an indefinite article meaning "any" and applying to more than one thing. *See United States v. Alabama*, 778 F.3d 926, 933 (11th Cir. 2015). In contrast, the definite article "the" specifies the object and refers to a discrete thing. *See Niz-Chavez v. Garland*, 593 U.S. 155, 165 (2021). So, R.C. 149.43(B)(1) permits a public-records request to be sent to *any* person responsible for the requested public record, and *any* person responsible for the requested public record who receives the request is required to fulfill it or explain why the request cannot be fulfilled.

{¶ 46} The "use of the word 'or,' a disjunctive term, signifies the presence of alternatives." *In re Estate of Centorbi*, 2011-Ohio-2267, ¶ 18; *see also* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, 116 (2012). R.C. 149.43(B)(1) therefore imposes duties on both a public office and any person responsible for public records at a public office, and one *or* the other must fulfill a valid public-records request. So, even when a person responsible for public records receives the request and is not able to fulfill it, the public office must still produce the record or explain why it cannot.

*Responsible for Public Records*

{¶ 47} Who exactly is "responsible" for public records? "Responsible" means "[h]aving a duty to be in charge of something or to look after someone or something." *Black's Law Dictionary* (12th Ed. 2024). And our cases have frequently referred to the person responsible for public records as being the

15

"'public-records custodian.'" *E.g.*, *State ex rel. Copley Ohio Newspapers, Inc. v. Akron*, 2024-Ohio-5677, ¶ 11, quoting *State ex rel. Miller v. Ohio State Hwy. Patrol*, 2013-Ohio-3720, ¶ 23; *see also Black's* (defining "custodian" to mean "[a] person or institution that has charge or custody"). So, a person responsible for public records is a person who looks after and keeps those records.

{¶ 48} LCI's requirement that inmates send requests to the person whose job duties include responding to public-records requests adds and subtracts from R.C. 149.43(B)(1): "upon request by any <u>inmate</u> ~~person~~, ~~a public office or~~ <u>the</u> person responsible for <u>responding to</u> public records <u>requests at a prison</u> shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." That, of course, is not what R.C. 149.43(B)(1) says, so by its failure to reject this bait-and-switch approach, the majority too jumbles the statute's words, as it did in *State ex rel. Clark v. Ohio Dept. of Rehab & Corr.,* 2025-Ohio-1577, ¶ 30. Instead, R.C. 149.43(B)(1) allows the request for a public record to be made to either a public office itself, through its employees, or to any person responsible for the public record.

*Duties upon Receiving a Public-Records Request*

{¶ 49} A public-records request triggers a course of action that a public office or a person responsible for the public record must take. The public office to which the request is made—again, necessarily acting through its officials and employees—or any person responsible for the public record "shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1).

{¶ 50} A public office or person responsible for public records must make the copies of the requested public records available to the requester at cost and within a reasonable period, *unless* the records contain information that is exempt from production, R.C. 149.43(B)(1), the request is "ambiguous or overly broad," R.C. 149.43(B)(2), or the public office or the person responsible for the requested

16

public record cannot reasonably identify what public records are being requested, *id.*

{¶ 51} If the requester makes an ambiguous or overly broad request or the public office or the person responsible for the requested public records cannot reasonably identify what records are being requested, then the public office or a person responsible for the requested records may deny the request. R.C. 149.43(B)(2). But that is not all the public office or a person responsible for the requested public records must do. In the response to the request, "the public office or the person responsible for the requested public record . . . shall provide the requester with an opportunity to revise the request by informing the requester of the manner in which records are maintained by the public office and accessed in the ordinary course of the public office's or person's duties." *Id.* The public office or a person responsible for the requested record cannot just say, "denied."

{¶ 52} And "[i]f a request is ultimately denied, in part or in whole, the public office or the person responsible for the requested public record shall provide the requester with an explanation, including legal authority, setting forth why the request was denied. If the initial request was provided in writing, the explanation also shall be provided to the requester in writing." R.C. 149.43(B)(3).

{¶ 53} What the public office or a person responsible for the requested public records cannot do is ignore or simply deny a request without explanation. Understanding this, this opinion now addresses Clark's particular requests as they fit within this framework.

**Analysis of Clark's Public-Records Requests**

*Chow-hall Menu*

{¶ 54} Clark alleges that on April 25, 2022, he sent a request by electronic kite to LCI's food-service department for a copy of the chow-hall menu. Robert Flowers, a food-service-department employee, flatly denied the request, writing, "We are not going to provide you with the menu." Flowers told Clark to "write

17

down the menu when you come to [the chow hall]." The majority concludes that the LCI food-service department does not maintain the chow-hall menu, saying that the dietary operations manager from the Office of Correctional Healthcare maintains the menu and communicates it to Aramark Food Service. Majority opinion, ¶ 26, 30.

{¶ 55} The problem with the majority's analysis is that *the food-service department had a copy of the menu* when Clark requested it. Flowers told Clark that it was posted in the chow hall, so Flowers knew exactly where it was kept and maintained and easily could have fulfilled Clark's public-records request on behalf of LCI. And since Flowers was also the person who answered Clark's public-records request, it is reasonable to infer that he is the person who looked after the record and therefore was responsible for it. *See State ex rel. Clark v. Dept. of Rehab. & Corr.*, 2025-Ohio-895, ¶ 14 (prison's contention that Aramark maintained LCI's master menu was contradicted by "a kite from an LCI worker in which the worker state[d] that he or she had submitted copies of a master menu to Clark's unit staff").

{¶ 56} There is something telling about public-information officer Ellen Myers's affidavit: she says it is her job to "respond to inmate public records requests." But she does not aver that Flowers does not maintain the chow-hall menu. Rather, she says that "Clark did not deliver his requests to the *right person* who is responsible for responding to inmate public records requests." (Emphasis added.) She does not deny that Flowers was responsible for the menu, even if he was not the person LCI designated to respond to public-records requests. If true, it would have been easy to say otherwise.

{¶ 57} And in denying the request, Flowers did not take any of the steps required by R.C. 149.43(B). He did not say that the request was overbroad or ambiguous or that the record was not reasonably identifiable. He did not invite Clark to revise his request. He did not give legal authority for the denial.

{¶ 58} Consequently, Clark is entitled to a writ compelling production of the menu and is eligible for statutory damages. *See* former R.C. 149.43(C)(1)(b) and (2) (now R.C. 149.43(C)(1)(b) and (3)). And because a well-informed public office or person responsible for the requested public records would have known to fulfill Clark's request or otherwise respond appropriately, I would not reduce the amount of statutory damages under former R.C. 149.43(C)(2)(a) and (b) (now R.C. 149.43(C)(3)). Clark is entitled to statutory damages in the maximum amount of $1,000 for the wrongful denial of his request for a copy of the chow-hall menu.

*Mailroom Policies and Procedures*

{¶ 59} On March 22, 2024, Clark sent a request by kite for a copy of the mailroom policies and procedures for processing incoming and outgoing inmate mail. Lieutenant B. Holley, a mailroom-department supervisor at LCI, responded, telling Clark to submit his request to the inspector's office. Clark clearly requested a mailroom record, and a mailroom supervisor was the one to answer the kite. It stands to reason that Holley had access to and control over mailroom records. Holley did not deny that in his response to Clark's public-records request.

{¶ 60} Further, in her affidavit submitted to this court, Myers does not aver that Holley did not maintain the mailroom policies. Again, she says that "Clark did not deliver his requests to the *right person* who is responsible for responding to public records requests." (Emphasis added.) And again, Myers does not deny that Holley was responsible for the policies—she says only that he was not the "right person" to respond.

{¶ 61} But even if Holley had no access to or control over the mailroom policies, that is not the end of his duty to respond to Clark's public-records request. It is "a public office or person responsible for public records [that must] make copies of the requested public record available." R.C. 149.43(B)(1). A public office—whether delineated as the mailroom department, LCI, or DRC—received a public-records request, and Holley denied it without explanation or justification on

behalf of the public office. The request was not overbroad, ambiguous, or for an unidentifiable record—at least, Holley never claimed that it was in his response. Nor did Holley provide any legal authority for denying the request. Holley therefore violated his duties under R.C. 149.43(B).

**{¶ 62}** And assuming that, bizarrely, the mailroom supervisor did not have access to his own department's policies and procedures, LCI is still not released from its obligations under the Public Records Act. Under R.C. 149.43(B)(1), there is a shared duty to respond to public-records requests between a public office and a person responsible for public records. When a public-records request is made to a person responsible for the public record at a public office other than the person deemed by the public office to be responsible for the public record, a request has still been made to the public office. And once a valid public-records request has been made to a public office, someone must respond to it and produce the record or explain why the record is not being produced. If no one responds, then the public office has violated the Public Records Act.

**{¶ 63}** So, when Holley received Clark's request for mailroom policies and procedures, he was obliged to fulfill it or send it to someone who could. What he could not do was simply deny it.

**{¶ 64}** Clark is therefore entitled to a writ of mandamus compelling DRC to produce the mailroom policies and procedures for incoming and outgoing inmate mail and is eligible for statutory damages. I would not reduce statutory damages under R.C. former 149.43(C)(2)(a) and (b) (now R.C. 149.43(C)(3)(a) and (b)). For these reasons, Clark is entitled to another award of $1,000 in statutory damages.

### Conclusion

**{¶ 65}** Unless otherwise prohibited by the Public Records Act, the people of this State have a right to receive copies of requested public records from a public office or person responsible for the records. And if the officials and employees of the public office fail to comply with their duty, then the Public Records Act has

teeth, allowing for a writ of mandamus and an award of statutory damages, when appropriate.

**{¶ 66}** Although the majority is correct that Clark failed to substantiate some of his public-records requests, two requests were improperly denied. Clark is therefore entitled to a writ of mandamus compelling production of those records and an award of $2,000 in statutory damages.

**{¶ 67}** Consequently, I concur in part and dissent in part.

_____

Thomas Clark, pro se.

Dave Yost, Attorney General, and D. Chadd McKitrick, Assistant Attorney General, for respondent.

_____