**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Whitfield v. Burkhart*, Slip Opinion No. 2025-Ohio-5612.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-5612

THE STATE EX REL. WHITFIELD *v.* BURKHART.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Whitfield v. Burkhart*, Slip Opinion No. 2025-Ohio-5612.]**

*Mandamus—Public-records requests—A public-information officer may not redirect a public-records request—Writ denied as moot and relator awarded $500 in statutory damages.*

(No. 2025-0114—Submitted August 6, 2025—Decided December 19, 2025.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ. FISCHER, J., concurred except as to the award of statutory damages. KENNEDY, C.J., concurred in part and dissented in part, with an opinion.

**Per Curiam.**

**{¶ 1}** Relator, Caleb Whitfield, an inmate at the Toledo Correctional Institution ("TCI"), brings this public-records mandamus action against respondent, Derek Burkhart, regarding five requests for public records that Whitfield sent to Burkhart on one day. Burkhart is an Ohio Department of Rehabilitation and Correction ("ODRC") employee, who serves as a correction warden assistant and the public-information officer at TCI. Because Burkhart has produced the requested records, we deny the writ as moot. We award Whitfield $500 in statutory damages because Burkhart's delay in producing the records was unreasonable.

## I. FACTS AND PROCEDURAL HISTORY

**{¶ 2}** Whitfield used TCI's electronic kite system[1] to transmit five public-records requests to Burkhart in less than ten minutes on December 3, 2024. Each request asked for a copy of a specific kite that Whitfield previously submitted to TCI. On December 10, Burkhart responded to each request: "Kites are not public record. You can obtain a copy of your kite by requesting it through the Inspector."

**{¶ 3}** Whitfield filed this mandamus action on January 23, 2025. He claims that Burkhart, as the public-information officer at TCI, is the proper records custodian and that Whitfield had been previously directed to submit public-records requests to Burkhart. To support his claim that he is supposed to submit public-records requests to Burkhart, Whitfield attached to his complaint two grievance complaints that he filed in August and September 2024. The August grievance was filed against the institutional inspector at TCI. Whitfield complained that after Burkhart directed Whitfield to submit a public-records request to the institutional inspector, the inspector did not produce all requested records. The August grievance against the institutional inspector was closed after TCI staff found that he had committed no violation. This response to the grievance further informed

---

1. "A kite is a type of written correspondence between an inmate and prison staff." *State ex rel. Griffin v. Szoke*, 2023-Ohio-3096, ¶ 3.

Whitfield that the institutional inspector had provided Whitfield with some records as a courtesy but that public-records requests "must be made through the Warden's Office at [Whitfield's] facility."

{¶ 4} Whitfield's September grievance was filed against the warden and in it Whitfield complained that the warden's assistant had misdirected his public-records requests to the institutional inspector while the institutional inspector directed them back to the warden's assistant. TCI closed the grievance because the "requirement to show the warden was personally and knowingly involved in a violation of law, rule, or policy, or personally and knowingly approved or condoned such a violation has not been met."

{¶ 5} In his complaint, Whitfield claims that electronic kites are public records that are subject to disclosure and that Burkhart should have produced the requested kites instead of directing him to the institutional inspector. Whitfield further claims that Burkhart's responses to his five public-records requests violated the Public Records Act. Whitfield seeks a writ of mandamus compelling Burkhart to produce the requested kites. He also seeks statutory damages for Burkhart's failure to timely respond to his public-records requests.

{¶ 6} After Burkhart filed an answer, we granted an alternative writ setting the schedule for the submission of evidence and briefs. 2025-Ohio-1313. Both parties filed briefs, but only Burkhart submitted evidence. Whitfield did not file a reply brief.

{¶ 7} Burkhart's evidence includes his affidavit, copies of Whitfield's five requests, and his responses to those requests: "Kites are not public record." In his affidavit, Burkhart attests that he received the five requests sent by Whitfield on December 3. He also attests that he serves as the public-information officer for TCI and manages public-information duties and oversees public-records requirements under ODRC policy. Although he serves as the public-information officer, Burkhart attests that he does not maintain or have access to the specific kites that

Whitfield requested, because inmate kites are transmitted and stored on a software system to which he has limited access. Burkhart attests that his access to kites on the software system is limited to kites sent to him or his office, the warden, the deputy warden of operations, the TCI major, and the TCI unit management chief.

{¶ 8} Burkhart attests that he was able to obtain the requested kites from the institutional inspector of TCI because the inspector has universal access to kites transmitted and stored on the software system. Burkhart attests that on January 30, 2025—five business days after Whitfield filed this mandamus action—Burkhart had the kites delivered to Whitfield. Burkhart's evidence contains the acknowledgement receipt that Whitfield signed when he received the kites.

## II. ANALYSIS

### A. Writ of mandamus

{¶ 9} "The Ohio Public Records Act, R.C. 149.43, requires a public office to make copies of public records available to any person upon request within a reasonable period of time." *State ex rel. Ware v. Akron*, 2021-Ohio-624, ¶ 11; R.C. 149.43(B)(1). A writ of mandamus "is an appropriate remedy to compel compliance with R.C. 149.43." *State ex rel. Wells v. Lakota Local Schools Bd. of Edn.*, 2024-Ohio-3316, ¶ 11. To obtain the writ, Whitfield must prove by clear and convincing evidence a clear legal right to the records requested and a corresponding clear legal duty on the part of Burkhart to provide the records. *Id*. Whitfield bears the burden to plead and prove facts showing that he requested public records under R.C. 149.43(B)(1) and that Burkhart failed to make the records available. *State ex rel. Ware v. Beggs*, 2024-Ohio-611, ¶ 11.

### B. Whitfield's mandamus claim is moot

{¶ 10} Whitfield and Burkhart agree that the five kites that Whitfield requested were produced five business days after Whitfield filed this mandamus action. "'In general, providing the requested records to the relator in a public-records mandamus case renders the mandamus claim moot.'" *State ex rel. Mobley*

*v. LaRose*, 2024-Ohio-1909, ¶ 7, quoting *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth*., 2009-Ohio-1767, ¶ 14.  Because Burkhart and Whitfield agree that the requested kites were produced, we deny Whitfield's mandamus claim as moot.

### C.  Statutory damages

{¶ 11} That Whitfield's mandamus claim is moot does not moot his request for statutory damages.  *State ex rel. Grim v. New Holland*, 2024-Ohio-4822, ¶ 5.  R.C. 149.43(C)(2) allows a requester of public records to recover statutory damages if (1) he submits a written public-records request "by hand delivery, electronic submission, or certified mail," (2) the request "fairly describes the public record or class of public records to the public office or person responsible for the requested public records," and (3) "a court determines that the public office or the person responsible for public records failed to comply with an obligation" set forth in R.C. 149.43(B).[2]  Statutory damages accrue at a rate of $100 for each business day that the records custodian fails to meet one of R.C. 149.43(B)'s obligations, starting on the day that the requester files a mandamus action, and accrues up to a maximum of $1,000.  R.C. 149.43(C)(2).

{¶ 12} Whitfield submitted his five public-records requests through TCI's kite system, which qualifies as an electronic submission for purposes of R.C. 149.43(C)(2).  *State ex rel. Griffin v. Sehlmeyer*, 2021-Ohio-1419, ¶ 21.  And it is undisputed that Whitfield fairly described the public records he sought to the public-information officer.  Thus, Whitfield is entitled to statutory damages if Burkhart failed to comply with his duties under R.C. 149.43(B).

---

2. The General Assembly has amended R.C. 149.43, most notably in 2024 Sub.H.B. No. 265 (effective Apr. 9, 2025).  This opinion applies the version of the statute enacted in 2024 Sub.S.B. No. 29 (effective Oct. 24, 2024).

*1. Burkhart failed to satisfy his obligations under the Public Records Act*

**{¶ 13}** Whitfield argues that kites are subject to disclosure under the Public Records Act and that Burkhart, as the public-information officer, is the person responsible for responding to public-records requests at TCI. Although Burkhart's responses to Whitfield's requests state that kites are not public records, we have consistently held that an inmate's kite is a public record, unless the specific contents of the kite are subject to another public-records exemption. *See, e.g.*, *State ex rel. Adkins v. Dept. of Rehab. & Corr. Legal Dept.*, 2024-Ohio-5154, ¶ 15 (an inmate may request his own kites in a public-records request). Here, Burkhart does not argue that the kites were not public records; he argues only that he complied with the Public Records Act by directing Whitfield to the institutional inspector at TCI.

**{¶ 14}** No violation of the Public Records Act occurs "when an employee not responsible for a public-records request directs the requester to the proper office or to where the record may be located or to the person responsible for the public record." *State ex rel. Clark v. Dept. of Rehab. & Corr.*, 2025-Ohio-1611, ¶ 29. Once a requester is directed to the proper public office or records custodian, it is the requester's responsibility to send the request to that office or custodian. *See Szoke*, 2023-Ohio-3096, at ¶ 3-5, 9-10 (the Public Records Act is not violated when an inmate failed to forward his request after being directed to the public-information officer at his correctional institution); *see also Clark* at ¶ 33 (once an inmate is directed to submit his request to the proper records custodian, the inmate is responsible for doing so).

**{¶ 15}** Although no violation of the Public Records Act occurs when an employee directs a public-records requester to the proper public office or records custodian, we have held that a public-information officer at a correctional institution is generally the proper records custodian. *See State ex rel. Clark v. Dept. of Rehab. & Corr.*, 2025-Ohio-895, ¶ 11 (a public-information officer responsible for responding to public-records requests cannot redirect an inmate who submits a

request); *see also State ex rel. Barr v. Wesson*, 2023-Ohio-3028, ¶ 18-19 (when an inmate is directed to submit his requests to the public-information officer, the request to that custodian is proper).

{¶ 16} Burkhart avers in his affidavit that he serves as the public-information officer at TCI. In that role, he attests that he handles public-information duties and oversees public-records requirements in accordance with ODRC policy. Despite being the public-information officer, Burkhart argues that he is not responsible for providing kites that he cannot directly access on a software system. He further argues that he complied with the Public Records Act by directing Whitfield to the institutional inspector at TCI. Burkhart is incorrect.

{¶ 17} Even though Burkhart could not obtain the requested kites on the software system directly, the record shows that Burkhart was able to identify the requested kites, obtain the kites from the institutional inspector, and facilitate the delivery of the kites to Whitfield after he filed this mandamus action. A public-information officer with public-records duties cannot escape those duties by directing a requester elsewhere within the correctional institution. *See State ex rel. Adkins v. Cole*, 2025-Ohio-558, ¶ 2, 17-18 (a public-information officer who is responsible for responding to public-records requests cannot direct an inmate to send his request elsewhere). Accordingly, Burkhart failed to comply with his obligations under R.C. 149.43(B) when he redirected Whitfield's public-records requests.

{¶ 18} Moreover, although Burkhart frames his argument here as claiming that he redirected Whitfield to the proper records custodian, that is not what he actually said in his kite responses to Whitfield. Instead, he incorrectly told Whitfield that the kites were not public records, and he was not responsible for producing them. He was not directing Whitfield to a proper public-records custodian; he was refusing to comply with his obligations to produce the public records.

7

### 2. *Burkhart's delay in production was not reasonable*

**{¶ 19}** Burkhart argues that if we conclude that he had an obligation to produce the requested kites, then we should hold that his delay in producing the kites was reasonable. He cites two cases to support the delay in production: *State ex rel. Morgan v. Strickland*, 2009-Ohio-1901, and *State ex rel. Shaughnessy v. Cleveland*, 2016-Ohio-8447. Neither case supports that Burkhart's delay in producing the requested kites was reasonable. In *Morgan*, a search for responsive records initially produced 74,000 pages of documents. *See Morgan* at ¶ 4. In *Shaughnessy*, the requested police reports spanned a two-week period, and the requester made subsequent public-records requests that generally resulted in 100 to 300 pages of responsive reports that required redactions. *See Shaughnessy* at ¶ 14. Here, in contrast, Whitfield requested five of his own kites that resulted in the production of six pages without redactions. Accordingly, we reject Burkhart's argument that his response time was reasonable.

### 3. *Whitfield is entitled to $500 in statutory damages*

**{¶ 20}** Burkhart next argues that if we determine that Whitfield is entitled to statutory damages, we should consider the five public-records requests as a single request because the kites asked for the same type of material and were sent within minutes of each other. Whitfield acknowledges that he sent the five kites in quick succession to Burkhart on the same day, but he nonetheless argues that this court should award him separate statutory damages for four of his five public-records requests. Specifically, he argues that he has four separate reasons for requesting the five kites and is therefore entitled to $2,400 in statutory damages. We reject Whitfield's argument.

**{¶ 21}** Separately transmitting public-records requests does not, alone, create separate requests for the purpose of calculating statutory damages. When multiple public-records requests concern the same general subject matter and are transmitted to the same public-records custodian on the same day, the requests are

viewed as a single request for the purpose of determining statutory damages. *See State ex rel. Ware v. Parikh*, 2023-Ohio-2536, ¶ 31. That Whitfield has four distinct reasons for requesting public records does not entitle him to separate statutory damages. *See State ex rel. Carr v. London Corr. Inst.*, 2015-Ohio-2363, ¶ 38 ("The purpose for which a public record is requested is irrelevant."). The evidence proves that Whitfield's five public-records requests concern the same general subject matter and were sent to Burkhart on December 3. Thus, the five requests are considered a single request for determining statutory damages. Because the requested kites were produced five business days after Whitfield filed this mandamus action, Whitfield is entitled to $500 in statutory damages. *See* R.C. 149.43(C)(2).

### 4. *Burkhart is not entitled to a reduction or denial of statutory damages*

{¶ 22} Burkhart argues that if we determine that he failed to comply with the Public Records Act, we should either reduce or decline to award statutory damages under R.C. 149.43(C)(2)(a) and (b).

{¶ 23} We may reduce or deny statutory damages if we determine that (1) based on the law at the time of the request, "a well-informed" custodian of public records would reasonably believe that the custodian's action was not a failure to comply with the Public Records Act, and (2) the "well-informed" custodian would believe that the action taken would serve the public policy underlying the statute. *See id.*

{¶ 24} Burkhart cites cases from this court in support of his decision to direct Whitfield to the institutional inspector and emphasizes Whitfield's failure to properly follow up once redirected. *See, e.g.*, *Szoke*, 2023-Ohio-3096, at ¶ 3-4, 9; *see also State ex rel. Ware v. Dept. of Rehab. & Corr.*, 2024-Ohio-1015, ¶ 32-33 (lead opinion) (a public-office employee who is not responsible for producing public records complies with the Public Records Act when that person redirects a

requester to the custodian of those records). These cases do not support Burkhart's actions.

{¶ 25} In *Ware*, the respondents argued that the correctional institution's public-information officer is the proper recipient of public-records requests. *See Ware* at ¶ 27, 31. And in *Szoke*, the person responsible for public records at the prison told the inmate to direct his request to the public-information officer at the inmate's prison. *See Szoke* at ¶ 3-4, 9. Neither case stands for the general proposition that a public-information officer may redirect a public-records request that the public-information officer receives. Nor do the cases create a duty for Whitfield to send additional correspondence before filing a mandamus action. Furthermore, Burkhart directed Whitfield to the institutional inspector after stating, "Kites are not public record." When Burkhart made these statements, they misrepresented the law regarding public-records requests. *See State ex rel. Clark v. Dept. of Rehab. & Corr.*, 2023-Ohio-4183, ¶ 8-9, 15. We reject Burkhart's arguments for reducing or declining to award statutory damages under R.C. 149.43(C)(2)(a) and (b).

### III. CONCLUSION

{¶ 26} Because Burkhart produced the requested public records, we deny Whitfield's mandamus claim as moot. We award Whitfield $500 in statutory damages because Burkhart had a duty to produce the records and his delay in producing them was unreasonable.

Writ denied as moot.

————————————

**KENNEDY, C.J., concurring in part and dissenting in part.**

{¶ 27} Relator, Caleb Whitfield, submitted five public-records requests to respondent, Derek Burkhart, the public-information officer at the Toledo Correctional Institution. I agree with the majority that Whitfield's mandamus claim

is moot and that Whitfield is entitled to statutory damages. However, I disagree with the amount of damages awarded.

{¶ 28} "When calculating statutory damages, what matters—and what is tied to the statutory language—is whether the public-records requests were made in the same transmission . . . ." (Emphasis deleted.) *State ex. rel. Ware v. Parikh*, 2023-Ohio-2536, ¶ 51 (Kennedy, C.J., concurring in part and concurring in judgment only in part). The timing or subject matter of the requests is irrelevant. *Id.* at ¶ 50.

{¶ 29} Whitfield transmitted five separate requests for public records, none of which were duplicative. Burkhart's failure to produce the requested records for five business days after Whitfield filed his mandamus action entitles Whitfield to $500 in statutory damages for *each transmission*, totaling $2,500. But Whitfield asked for only $2,400 in his merit brief, so I would award $2,400.

{¶ 30} Because the majority does otherwise, I concur in part and dissent in part.

_____

Caleb Whitfield, pro se.

Dave Yost, Attorney General, and B. Alexander Kennedy, Assistant Attorney General, for respondent.

_____